**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ANTHONY E. WILSON,               *

Plaintiff                        *

v                                *          Civil Action No. PJM-15-2151

OFF. EVANS, *et al.*,            *

Defendants                       *
                                ***

## <u>MEMORANDUM OPINION</u>

Pending is a Motion to Dismiss, or alternatively, for Summary Judgment filed by Defendants[1] Warden Frank B. Bishop, Jr., Det. Rodney O. Likin, Sgt. Lisa L. Lasher, CO II Jerry A. Evans, CO II Vincent J. Lark, CO II Gerald L. Wilson, Jr., and CO II Nicholas A. Hetz ("Correctional Defendants").  ECF 31.[2]  Defendants Colin Ottey, M.D., Steven Makay, P.P.N., Maria Lewis, L.P.N., Peggy Mahler, N.P., and Beveraly McLaughlin, N.P. ("Medical Defendants") have also filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment.[3] ECF 33. Plaintiff was informed by the Court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that failure to file a response in opposition to the Motions filed by Defendants could result in  dismissal of the Complaint.  ECF 32 & 35. Plaintiff has filed nothing in opposition. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' dispositive motions will be GRANTED.

---

[1]          The Clerk shall amend the docket to reflect the correct names of Defendants.

[2]          Citations are to the court's electronic docket, except as to ECF 33, Ex. 1 which is filed separately in paper format. .

[3]          Defendants Fontain and Lisa Shell were not served with the Complaint.  Plaintiff's Complaint against Fontain and Shell shall be dismissed without prejudice. *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

## I. Complaint Allegations

Plaintiff Anthony E. Wilson, an inmate currently confined at the North Branch Correctional Institution, ("NBCI"), filed his Complaint naming as Defendants the former Warden of the Western Correctional Institution ("WCI"), Frank Bishop, Correctional Officers Lasher, Evans, Hetz, Fontain, Vincent J. Lark, and Gerald L. Wilson, Jr.,  Medical Providers Colling Ottey, Lisa Shell, Steven Makay, Maria Lewis, Peggy Mahler, and Beverly McLaughlin, as well as IID Detective Rodney Likin.   ECF 1, pp. 1-3. Plaintiff alleged Correctional Defendants used excessive force against him, conspired to have an inmate assault him, retaliated against him and all Defendants conspired to deny him constitutionally adequate medical care.

### A.    January 11, 2014 incident

In support of his Complaint, Plaintiff states that on January 11, 2014, while housed at WCI, he advised Lark that he did not want to go into general population due to enemies there. *Id*., p. 3.   Lark became verbally aggressive and advised Plaintiff that he did not care what Plaintiff wished to do. *Id*., p. 4.   Plaintiff acquiesced but told Lark that he needed clothing in order to leave segregation as all he had was "a homemade shirt and short" and it was winter.   *Id*. Plaintiff states that Lark became "adverse towards [him]." *Id*. Plaintiff advised Lark that institutional regulations required that he "be afforded proper and basic needs." *Id*. Plaintiff, dressed as he was, refused Lark's instruction to walk outside from Unit #4. *Id*.  Lark handcuffed Plaintiff  and while advising that he would be taken to B-tier segregation was instead taken to the property room and placed in a "strip cage." *Id*.

After being placed in the strip cage, Wilson directed Plaintiff to remove all of his clothes for a strip search. *Id*.  Plaintiff was directed to turn around, bend at the waist and spread his

buttocks. As he turned to comply, he was maced by Wilson and Hetz. *Id*.  Plaintiff states that Hetz requested another can of mace which was also sprayed on Plaintiff. *Id*., p. 5.  Plaintiff states that the officers taunted him as he tried to move to keep his face and genitals from being sprayed with mace. *Id*.  Plaintiff advised the officers that he could not breathe but as he dropped to one knee they ordered him to stand and be cuffed. *Id*.  He complied and was then held by his handcuffs and back of his neck and forced to the floor when Fontain, Wilson, Lark and Hetz began to punch and stomp Plaintiff in his head, back, abdomen, and upper torso. *Id*.  Officers then grabbed Plaintiff by the legs and kicked him in the testicles and penis.  *Id*.

Plaintiff claims he was left for three and a half hours before being taken to the medical unit for treatment of chemical exposure. *Id*., p. 6.  He was examined by Nurse Shell. Plaintiff advised her he was dizzy, burning, and had blurred vision. He received no treatment. The officers advised Shell that Plaintiff was not injured and she should so state in her report. *Id*. Plaintiff indicates that Shell did as she was told, thus conspiring to cover up the assault. *Id*.

Plaintiff admits that he was provided a rinse off shower and was then taken to a contingency cell which he alleges had no bunk, bedding, mattress, clothing, toiletries or running water. *Id*.

Plaintiff states that he submitted sick calls regarding the pain in his lower back, constant migraine headaches, and severe pain in his groin but received no medical care. *Id*.

After writing a complaint regarding Defendants' actions and attempting to file criminal charges he states that he was repeatedly threatened and harassed. *Id*., p. 7.  An IIU investigation was opened and Detective Likin assigned to investigate Plaintiff's claims. Plaintiff states that he and Likin previously had problems when Likin was the housing unit lieutenant of HU #4.  *Id*.

Plaintiff states that when Likin came to interview him, he told Plaintiff that he was not going to do anything for Plaintiff. *Id.*, p. 7. After the interview Plaintiff filed a grievance against Likin and wrote to the Director of IIU but received no response. *Id.*

**B.** **April, 2014 incident**

On April 2, 2014, after having asked Bishop and Likin to arrange his transfer and for an impartial investigation into the previous January 11, 2014 incident, Evans handcuffed Plaintiff and told inmate Albert Burley to "get 'em." *Id.*, p. 8. Burley attacked Plaintiff with a weapon which he stated was provided by a prison guard, stabbing Plaintiff in the neck and back multiple times. Evans stood looking on during the attack. Burley stopped the attack and asked Evans if it was enough but Evans told Burley to "finish it..." and Burley resumed his attack on Plaintiff. *Id.* Plaintiff heard other inmates kicking and yelling and other guards running up the stairs. *Id.* At that point Evans told Burley to cuff up. *Id.*

Plaintiff was escorted to medical where he was examined by Ottey and McLaughlin. Initially Ottey stated to McLaughlin that he thought Plaintiff should be sent out for further medical treatment. Evans told Ottey to wait and consulted with another unnamed officer and Ottey and McLaughlin. Plaintiff alleges they conspired to treat Plaintiff at the facility rather than have him treated at an outside facility. *Id.*, p. 8-9.

Ottey told McLaughlin that Plaintiff required staples, stitches and a vaccine. Plaintiff informed Ottey that he was in pain and that his neck was numb "and had warmish feel." *Id.* Plaintiff received 30 staples and four stitches in his neck. He did not receive any pain medication or a proper examination for the loss of feeling in his neck and lower back. *Id.* Ottey

and McLaughlin failed to document Plaintiff's complaints of pain, numbness, warmth, and tingling in his neck and lower back. *Id*.

On April 3, 2014, Plaintiff was called for a dressing change.  He was seen by Maria Lewis. He advised her that his neck kept "going without feeling" and he had pain, numbness, and tingling and his lower back and spine.  *Id.,* p. 9. Lewis "stated to [Plaintiff] that she was not losing her job for no inmate and that she was sorry."  *Id*. ,p. 10. Plaintiff filed an ARP as to the conduct of Ottey. McLaughlin, and Lewis but received no reply. *Id.*

The following day, Plaintiff was seen by Peggy Maler, RNP.  He advised Mahler that he continued to have numbness and tingling in his neck, back and spinal area.  Mahler told  Plaintiff that any treatment he required was to be performed by the WCI infirmary.  Plaintiff states that Mahler falsified documents by stating that Plaintiff denied having pain or bleeding and offered no concerns when he stated that his complaints over the preceding days had not been addressed. *Id*.  Plaintiff was seen again later that day by Lewis who reiterated her original position from the day before and did nothing to treat Plaintiff's medical needs.  *Id*.

Plaintiff reported for a dressing change on April 5, 2014.  He was seen by Steven Makay, LPN.  Plaintiff attempted to advise Makay of his problems and lack of treatment but Makay responded "I know who you are and you have to take this matter up with custody...." *Id*., pp. 10-11.

Plaintiff states that the lack of treatment went on for months and at the time he filed this Complaint he had yet to receive adequate treatment for pain or nerve damage. *Id*., p. 11.

## II. Defendants' Responses

Correctional Defendants assert that Plaintiff was not subjected to excessive force or a conspiracy among correctional staff to cause him harm or deny him medical care. They further assert that Plaintiff received appropriate medical care. They have provided declarations and documentary evidence to support their contentions. ECF 31-2. Medical Defendants assert that Plaintiff received appropriate medical care and provide medical records to support their assertion. ECF 33.

## A. January 11, 2014 incident

The January 11, 2014 incident was fully documented. It was Plaintiff who assaulted Defendant Wilson. ECF 31-2, pp. 12-29, 64-137. Plaintiff was served a Notice of Inmate Rule Violation and pled guilty to the infraction. *Id*., p. 96. Two months after the incident, Plaintiff submitted ARP WCI-04-15-14 alleging facts similar to those raised in this Complaint. *Id*., pp. 76-79. As a result of the ARP the Internal Investigation Division ("IID") investigated the claims. Plaintiff provided inconsistent statements throughout the investigation. *Id*., pp. 65-71, 76-79.

Lark and Wilson's declarations regarding the incident are consistent with incident reports made contemporaneously with the incident as well as statements provided to IID during the investigation. The reports and declarations demonstrate that Plaintiff refused general population housing. Lark took Plaintiff to the strip cage in the property room so that he could take off his clothes and be provided a jumpsuit to return to segregation housing. ECF 31-4, ¶¶ 5-9 (Declaration Lark) ECF 31-5, ¶¶ 5-9 (Declaration Wilson); ECF 31-2, pp 12-29. Wilson arrived to assist and as he reached to take Plaintiff's last article of clothing, Plaintiff reached through the pass through slot and grabbed Wilson's hand. *Id*. He refused direct orders to let go. Lark applied a brief burst of pepper spray and Plaintiff released Wilson's hand. *Id*. Plaintiff was taken

to the medical department to receive treatment for exposure to pepper spray.  He was provided a shower and placed in a cell. *Id*.  Medical reports and photographs taken immediately after the incident demonstrate that he did not suffer any of the injuries alleged in the complaint. ECF 31-2, pp. 125, 133-134.

Plaintiff was placed on staff alert for three days. *Id*., p. 9-10. He received a notice of inmate rule infraction and on January 17, 2014, pleaded guilty to two violations. He was sentenced to 225 days of segregation. *Id*, p. 7, 25-27, 92.

On March 12, 2014, Plaintiff submitted ARP WCI -04-15-14 concerning the incident. *Id*., pp. 76-79.  Due to the allegations in the ARP, the matter was referred to IID.  On March 27, 2014, Defendant Likin interviewed Plaintiff. At that time, Plaintiff stated that only Defendants Lark and Wilson were involved in  the January 11, 2014 incident. *Id*., p. 70.  He denied that anyone else was involved. *Id*.

Lark and Wilson aver that neither Hetz or Fontain were involved in the incident.  ECF 31-4 ¶ 10; ECF 31-5 ¶ 10.  Hetz has also filed a declaration denying involvement in the January 11, 2014 incident. ECF 32-6, ¶¶ 5-8.

Additionally, during the IID interview, Plaintiff denied any injury other than pepper spray in his eyes. *Id*., p. 71.  Plaintiff's statement to IID regarding a five minute beating are consistent with his medical reports,. Additionally, Plaintiff denied having any problems with staff after the incident. *Id*.

Robustiano Barrera, M.D., avers that evaluation for pepper spray exposure is a common occurrence within the prison setting. ECF 33-5, ¶ 5.  Pepper spray is derived from cayenne peppers and is designed to be an inflammatory irritant when it contacts the skin, eyes, nasal

passages, and mouth. *Id.*  Barrera avers that in general no lasting physical damage occurs due to exposure to pepper spray and usually the symptoms begin to resolve themselves in 15-45 minutes. *Id.*  Removing the clothes worn during the exposure and rinsing the areas of the body exposed is sufficient decontamination. *Id.*

On the day of the incident, Plaintiff was seen by Lisa Shell, R.N. related to a use of pepper spray on Plaintiff. *Id.*, Ex. 1, p. 1. It was noted that Plaintiff ambulated without assistance. His eyes were red due to use of pepper spray. A small abrasion was noted on Plaintiff's right shoulder as well as two abrasions on his right knee.  Plaintiff did not report any other injuries or complaints at that time.  After Plaintiff was medically cleared he was given a shower to rinse off the pepper spray from his face and body. *Id.* Contrary to Plaintiff's allegations raised in the complaint, after the encounter Plaintiff did not raise any health complaints relative to the incident. ECF 33-5, ¶ 7.

**B.       April 1, 2014 attack by Inmate Burley**.

On April 1, 2014, Plaintiff's cellmate Albert Burley attacked him, stabbing him numerous times. ECF 31-2, p. 42.  Burley was served with a notice of inmate rule violation in regard to the attack and ultimately pled guilty. *Id.*  Defendant Evans reported that he placed Plaintiff in handcuffs in preparation for escorting him to the shower. *Id.*, pp. 39, 42. While Plaintiff was handcuffed Burley attacked him.  Sgt. Bingaman arrived to assist in quelling the altercation. Evans immediately escorted Plaintiff to the medical room for treatment. *Id.*, *see also* ECF 31-7,  ¶ 7. While Plaintiff did suffer substantial injuries arising from the attack, medical staff were able to treat him in house. ECF 31-2*,* pp. 46-47.

Plaintiff filed ARP WCI-0553-14 concerning the attack. In the ARP he made no allegation that Evans conspired with Burley in regard to the assault. *Id*., pp. 30-32. To the contrary, in the ARP Plaintiff stated that Evans gave several orders to Burley to stop the attack but Burley continued the assault.  Plaintiff also stated in the ARP that Evans stuck a can of mace in the slot which is what stopped the assault. *Id*. In the ARP Plaintiff requested single cell housing and to be transferred to another institution. *Id*.  The ARP did not contain any allegations of denial of medical care or conspiracy between medical and correctional staff to deny him care. *Id*.

Plaintiff was seen by Nicole Zacot, L.P.N. on April 1, 2014, due to the altercation with his cellmate.  Plaintiff reported being stabbed in the back by his cellmate. ECF 33, Ex. 1, pp. 2-3. He complained of pain. His back was bleeding and no signs of infection were noted. He was given a Tetanus shot, the area was cleaned, the bleeding was stopped by the application of pressure to the wounds. *Id*. A physician was contacted for treatment advice. *Id*.

Later that day, Plaintiff was seen by Defendant Beverly McLaughlin, R.N.P.  *Id*., pp. 4-6. It was again noted that Plaintiff arrived in the medical unit ambulatory and appeared in no acute distress. Blood was observed on his jumpsuit and lacerations noted on his neck and back.  Six lacerations were treated on Plaintiff's back with Derma-bond and Steri-strips. Four sutures were applied to Plaintiff's neck  lacerations and a total of 30 staples were applied to Plaintiff's other lacerations.  He was advised to change the dressings daily and prescribed Keflex.  *Id*. Plaintiff was directed to follow up in 7-10 days for suture removal.  He was provided Motrin and Lubri-skin (a topical lotion).  *Id*.

Plaintiff was seen for follow up daily from April 3 to April 8, 2014. *Id.*, pp. 8-10, 12, 15-16. On each occasion, the wounds were noted as healing with no sign of infection. The staples and stitches were intact. The wounds were regularly cleaned with saline and bacitracin and band aids were applied. Plaintiff offered no complaints and denied pain. He reported compliance with his antibiotic regimen. *Id.*

On April 10, 2014, Plaintiff was seen by R.N.P. Mahler for suture removal. *Id.*, p. 13. He denied fever, chills, pain and/or drainage from the wounds. *Id.* The sutures and staples were removed. The wound appeared to have healed appropriately with slight scabbing along the suture line on Plaintiff's neck. It was reported that he tolerated the procedure well. Slight bleeding was noted from one suture site on Plaintiff's neck. *Id.* A band aid was applied and Plaintiff was provided replacement band aids to apply himself. He was directed to refrain from picking at the area and to keep the area clean and dry. *Id.* Later that day, Plaintiff was seen by L.P.N. Lewis. He denied pain and declined a final application of bacitracin. *Id.*, p. 15.

From April 10, 2014, to the filing of the instant Complaint, Plaintiff sought no further care related to the injuries he sustained during the April 1, 2014 assault. ECF 33-5, ¶ 19.

### III.    Non-dispositive Motion

Pending is Medical Defendants' Motion to Seal. ECF 34. Local Rule 105.11 governs the sealing of all documents filed in the record and states in relevant part that: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2016). The rule balances the public's general right to

inspect and copy judicial records and documents, *see Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265- 66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (quoting *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011). Having shown a compelling interest in sealing Plaintiff's medical records at issue, the Motion to Seal shall be granted

### IV. Standard of Review

#### A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d

870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## B.    Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.   No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## V. Analysis

### A.     Personal Participation/Supervisory Liability

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.   *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no

respondeat superior liability in a *Bivens* suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Plaintiff has failed to allege any violation of constitutional rights by Defendants Bishop, Lasher or Likin.  Rather he claims that these Defendants were aware of the  unspecified illegal actions of correctional staff and failed to correct them.  ECF 1.  Plaintiff has failed to point to any personal conduct by these Defendants and they are entitled to dismissal.

**B.      Excessive Force Claims**

Plaintiff's claim against Correctional Defendants is that he was subjected to excessive force in violation of his Eighth Amendment rights.  Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force.  *Wilkins v. Gaddy*, 559 U.S. 34 (2010).  The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously

and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. at 38.

In the context of the use of pepper spray by prison staff, "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 440 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted). The use of pepper spray is not "per se a cruel and unusual punishment." *McCargo v. Mister*, 462 F.Supp. 813, 818 (D. Md. 1978). It may be used in order to control recalcitrant inmates. *Williams*, 77 F. 3d at 763. Analysis regarding the amount of chemical agent used focuses, as with all other excessive force claims, on whether the Defendant acted with a sufficiently culpable state of mind. *Iko*, 535 at 238 (4th Cir. 2008) (citations omitted) (holding correctional officer not entitled to qualified immunity where additional chemical agent was deployed into inmate's cell after inmate attempted to comply with officer's order, did not react violently, and officer failed to remove inmate's clothes or secure medical care for inmate after chemical agent exposure).

Eighth Amendment violations have been found where an officer used more than a reasonable amount of a chemical agent. *See, e.g., Furnace v. Sullivan,* 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and other officer also joined in); *Lawrence v. Bowersox,* 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); *DeSpain v. Uphoff,* 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier). However, where an inmate repeatedly ignores

15

official commands, multiple applications of pepper spray have been found reasonable. *See Williams,* 77 F.3d at 763 (finding no Eighth Amendment violation where officer administered pepper spray after prisoner asked "Why?" in response to command); *Jackson v. Morgan,* 19 F. App'x. 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell); *Norris v. Detrick,* 918 F.Supp. 977, 984 (N.D.W.Va.1996) (upholding use of two blasts of pepper spray when inmate refused to return to his cell during lockdown). Use of chemical agents is reasonable when, as here, an officer is attempting to maintain order and discipline in the institution. *Santiago v. Walls,* 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); *Combs v. Wilkinson,* 315 F.3d 548, 558 (6th Cir. 2002) (holding use of pepper spray during prison riot appropriate).

In their unopposed motion which is supported by declarations under oath and verified business records, Correctional Defendants assert that only the force necessary to gain Plaintiff's compliance was used in the January 11, 2014 incident. ECF 31-4, ¶¶ 8-11; ECF 31-5, ¶¶ 7-11 During that incident, Plaintiff refused housing and while being placed in a cell reached through the door slot and grabbed Officer's Wilson's hand.  A short burst of pepper spray was applied by Officer Lark in order to protect Officer Wilson, gain compliance with a lawful order, and to maintain security. The incident ended quickly.  No other officers were involved in the use of force. ECF 31-6, ¶¶ 4-5.

Plaintiff was taken to the medical unit and a decontamination shower provided. Plaintiff's injuries were consonant with Defendant's version of events, e.g. that only pepper spray was used in the altercation.  Plaintiff ultimately plead guilty to assault upon staff for the incident. It is clear

that some force was necessary to stop Plaintiff's assault on correctional staff and gain his compliance with direct orders.  Defendants are entitled to summary judgment on this claim as no excessive force was sued.

Plaintiff's claim that correctional staff conspired with Burley to assault him likewise fails.  Officer Evans avers that Burley's assault was unexpected and occurred after Wilson had been handcuffed. ECF 31-7, ¶ 5. Evans did not encourage Burley to assault Plaintiff or provide him with a weapon for doing so.  *Id*., ¶ 9. Plaintiff's claims is further refuted by the absence of even an allegation in his ARP, created close in time to the incident,  that correctional staff were involved in this spontaneous assault. Correctional Defendants are, therefore, entitled to judgment in their favor.

### C.      Medical Claim

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate

consequences. .. To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

18

The undisputed record establishes that Plaintiff did not suffer a serious medical need for which he did not receive constitutionally adequate medical care.  Indeed, the records filed establish that Correctional Defendants took Plaintiff to the medical unit following the use of pepper spray on January 11, 2014, and immediately following the stabbing on April 1, 2014.

He was examined and provided a decontamination shower after the use of pepper spray. He had no other injuries which required care and he did not seek any additional health care in regard to the January 11, 2014.

Plaintiff's stab wound were treated following the April 1, 2014 incident.  His wounds were properly cleaned and closed. He received daily wound care and ultimately the staples and stitches were removed without incident. The wounds healed well. Plaintiff did not submit any sick call slips seeking additional care, nor did he file anything after the sutures/stitches were removed seeking additional care.  His claim that he did not receive necessary analgesic pain medication is not supported by the record, given that Plaintiff offered no complaints of pain.

Plaintiff has failed to rebut the evidence offered by Defendants as to the adequacy of the care he received.  The fact that Plaintiff's concerns have been documented, discussed, followed-up, is evidence that there has been no attempt by medical staff or the named Defendants to ignore a serious medical need or to recklessly disregard it. Plaintiff's bald allegations of denial of medical care amount to little more than a disagreement with the judgment of his health care providers.  Such disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975).  Defendants are entitled to summary judgment in their favor.

**D.    Conditions of Confinement**

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To the extent Plaintiff intended to advance a conditions of confinement claim regarding his being housed on a contingency cell for three days without proper hygiene items or running water, his claim is unavailing as he has failed to allege much less demonstrate any injury arising from his being so housed. The claims is subject to dismissal.[4]

## E.     Retaliation

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that

---

[4] Having found no constitutional violation,  the Court need not address Defendants' claims that they are entitled to qualified immunity.

the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).   It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment.  *See Burton v. Livingston*, 791 F.2d 97, 100-01 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim).   "A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (*judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACL U of Md., Inc. v. Wicomico Cty, Md*., 999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994). While Plaintiff alleges that after writing up Defendants he was threatened and harassed (ECF 1, p. 7), he provides no facts in support of these bald allegations. Defendants specifically deny threatening or retaliating against Plaintiff. ECF 31-4, ¶ 13; ECF 31-5, ¶ 12; ECF 31-6, ¶ 8; ECF 31-7, ¶ 10. They are entitled to summary judgment.

## VI. Conclusion

For the aforementioned reasons, Defendants unopposed Motions to Dismiss, or in the Alternative Motions for Summary Judgment, construed as a Motions for Summary Judgment, shall be granted.  A separate Order follows.

_____/s/_____<br>PETER J. MESSITTE<br>UNITED STATES DISTRICT JUDGE

February 16, 2017